A. WEYLE, Respondent, v. CENTER et al., Appellants.

No. 762; July 16, 1866.

Van Ness Ordinance.—The Design of the Van Ness Ordinance was to graft a city title upon a possession, not merely vague, indeterminate and floating, but actual, bona fide and exclusive, evidenced by acts clearly showing a segregation of the land and a subjection of it to the will and dominion of the claimant.

Ejectment—Evidence.—A Verdict, the Effect of Which is to Deprive a party of his actual possession, ought to be found only from evidence affirmative and squarely to the point.

APPEAL from Fourth Judicial District, San Francisco County.

Sharp & Lloyd and G. F. Sharp for respondent; Wilson & Wilson and Edward Tompkins for appellants.

See Caldwell v. Center, 30 Cal. 540, 89 Am. Dec. 131.

SANDERSON, J.—This is an action to recover Lot No. 2, in what, as claimed by the plaintiff, is called the Foley tract, in the city of San Francisco. The action is founded upon prior possession under the Van Ness ordinance. The plaintiff claims under a series of conveyances commencing with Michael Foley, who was, as he alleges, the first possessor, while the defendant claims under John Wilson as the prior possessor. The alleged prior possession of Foley dates from 1850, and that of Wilson from June, 1853.

Several exceptions were taken to the admission in evidence of the various deeds in the plaintiff's chain of title, which under the view which we take of the controlling question in the case (prior possession), we deem it unnecessary to notice. Those deeds are of no consequence unless it be shown that Foley was in the actual prior possession of lot No. 2, within the meaning of the Van Ness ordinance, and we are of the opinion that the plaintiff has utterly failed to show that fact.

Who was in possession of lot No. 2, on or before the first day of January, 1855, within the meaning of the Van Ness ordinance, would seem to be a fact requiring but little evidence to establish. That ordinance was not designed to graft the city title upon a vague, indeterminate and floating pos-

session, but upon an actual bona fide and exclusive possession evidenced by such acts as clearly show a segregation and subjection of the land to the will and dominion of the claimant. So far, however, as this case is concerned, it is unnecessary to inquire what special acts will have that effect, for in our judgment the testimony in this case fails to show any acts whatever on the part of Foley tending to vest him with the actual possession of lot No. 2. But notwithstanding the apparent simplicity of the question, this case is lumbered with a mass of evidence filling over a hundred and fifty pages of printed matter, nearly all of which tends in no respect to throw any light upon the question of the alleged prior possession of Foley of lot No. 2. With the issue thus covered up by a mass of indigestible testimony, it is not surprising that the jury failed to scent the truth. Under the circumstances there could have been no well-grounded hope of their guessing right. It is only by the most patient and repeated sifting that the few grains of wheat to be found in the testimony can be separated from the mountains of chaff beneath which they are concealed.

That Foley had a house situated about a quarter of a mile from the locus in quo, with a garden and corral inclosed nearby, cannot be denied; but where the boundaries to his alleged tract of a hundred and sixty acres were and what they were it is utterly impossible to say, and much less can it be said that lot No. 2 was ever within those boundaries. This want of visible and permanent boundaries may be accounted for, perhaps, upon the ground that Foley seems to have supposed that he could hold a hundred and sixty acres under the survey of his so-called pre-emption right, filed in the alcalde's office in 1849, which was offered in evidence, but excluded by the court. Deeming that a sufficient security, it doubtless was his intention to inclose as fast as his means might enable him or the necessities of his business require.

The testimony of W. Shear upon which the plaintiff relies in part, fails to connect lot No. 2 with Foley's possession. We do not understand the testimony of this witness as it seems to be understood by counsel for the plaintiff. The witness does not state that Foley had a hundred and sixty acres inclosed, and that lot No. 2 was within the inclosure. His statement that "he found the premises inclosed under cultivation" is to

be taken in connection with his other statements. So taken its meaning is obvious. We understand him to mean that the premises inclosed (that is, so far as they were inclosed) were under cultivation; not that the premises—the whole one hundred and sixty acres—were inclosed and under cultivation. He says that Foley claimed one hundred and sixty acres; but he does not state that it was all inclosed or under cultivation, or that there were any visible boundaries showing the extent and exact location of his claim. As to how Foley's possession was defined, he is silent. He merely states that he believes that lot No. 2 is a part of what Foley claimed, without stating any facts tending to show that it was inclosed at any time, or that Foley was ever in the actual possession of it by any other means.

The testimony of Castle, another of plaintiff's witnesses, aside from being incoherent and contradictory, and therefore entitled to but little weight, also fails to connect the locus in quo with Foley's actual possession. He merely states that Foley fenced and cultivated a tract of land east of the county road or Mission street, but the precise location of the land so inclosed and cultivated he does not give, nor does he state that lot No. 2 was a part of it. Like most of plaintiff's witnesses, he indulges in general and vague statements from which it is impossible to form any satisfactory conclusion upon the question involved. And we may as well remark in this connection that the entire examination of the plaintiff's witnesses evinces a reluctance on the part of his counsel to bring them squarely up to the point in issue, as if fearful that if pressed they might fail them. Their testimony is therefore exceedingly blind, and leaves one entirely in the dark as to the true facts. There is occasionally a gleam of light, but so shifting and uncertain as to afford but a glance at short and separate sections of Foley's supposed fences and cultivated fields. On general principles, no verdict depriving another of his actual possessions ought to be found upon testimony of so unsatisfactory a character.

The testimony of Anderson, Stevens and Baker relates to the status of the land and the acts of other parties subsequent to the sale by Foley to Welch, and has therefore no bearing upon the question as to whether lot No. 2 was in Foley's actual possession at any time prior to his leaving the premises.

Portions of the testimony of Mary Rauselle, the step-daughter of Foley, tends to prove an inclosure and cultivation by Foley of lot No. 2, but she is speaking of events which transpired thirteen years ago, and when she was but ten years of age. By her own statements and the testimony of other witnesses, it is apparent that she was so far mistaken as to render her entire testimony altogether unreliable. She says that her father cultivated land east of Mission street in 1852, yet she is unable to state when Mission street was opened, and it is proved by other witnesses of the plaintiff that it was not opened until 1853, a year after the time at which she says her father cultivated land upon the east side of it and after her father had sold out and quit the neighborhood.

The testimony of Wallace also fails, in our judgment, to show any certain or exclusive possession in Foley to the east of Mission street. Speaking of the inclosure made by Foley in 1851, he states that Foley ran his fence east along the line between himself and Jansen as far as Mission street where he met with a stoppage because of a difficulty with other parties. That there was a tract to the east of Mission street which was in dispute between Foley and other parties, and that Foley fenced a small part of it in the latter part of 1851, but he describes the part so fenced as running down toward Center street, which is in a direction opposite to lot No. 2. But, at best, admitting that this inclosure included lot No. 2, Wallace's testimony shows only a scrambling possession in Foley of any land to the east of Mission street, which does not warrant a recovery, while Lockwood, another of plaintiff's witnesses, testifies that Foley's inclosure never extended east of the east line of Mission street.

We deem it unprofitable to review further in detail the testimony of plaintiff's witnesses. We have noticed those upon whom he chiefly relies and whose testimony is the strongest in his favor, and found that they wholly fail to make a case for the jury, and when taken in connection with the testimony on the part of the defendants the conviction is irresistible that Foley never had, if any, such a possession of the locus in quo as to justify a recovery under the Van Ness ordinance.

Judgment reversed and a new trial ordered.

We concur: Shafter, J.; Currey, C. J.; Rhodes, J.; Sawyer, J.